May it please the Court, Counsel. My name is Scott Porzberg and I represent the Movement Appellant, in this case, the North Dakota Legislative Assembly. With me today are John Bjornsson, the Director of Legislative Counsel, and Emily Thompson, who is the Director of the Legal Division, also of Legislative Counsel. Now this is a consolidated appeal with two issues corresponding to the two appeals that we filed that are now one appeal. Whether the District Court erred in denying the Assembly's motion to intervene, and two, whether the District Court erred in denying the Assembly's motion for more time to submit a remedial plan. Now, the focus of these two appeals is this. This is not a case where the District Court declared a law unconstitutional and voided it and sent it back to the Legislature for a do-over. This is a case where the District Court declared a law void and then imposed its own. A piece of legislation on the State of North Dakota. It did so without giving the only body that constitutionally can adopt a law in North Dakota an opportunity to be heard on what that law should say. But what happened? So just a basic question, and maybe I'm confused, but what if we agree with you that you should have been granted intervention as a matter of right or your motion to intervene should have been granted? Given where we're at in this case and with the impending election, walk me through what happens. And I'm wondering why isn't the case moot? With the election coming up in a matter of weeks, the Secretary of State was on the record saying I believe it was a December 31 deadline. I believe there was a presentation made to the District Court that maybe there was a date in April that was kind of the drop-dead date. If you were entitled to be in the case, what do we give you at this point that would be a remedy for that error? I understand, Your Honor. If the Court sides with the Secretary on the next appeal to be heard today, then the case, then our appeals are moot. Under any other set of circumstances, we don't believe the case is moot at all, and this is why. North Dakota remains with a law in place, legislative districts, imposed by the Federal Judiciary. That's going to be true until either 2030 when we redistrict again or when the legislature passes a special law. Is that based on the face of the District Court's order, or is it possible for the legislature under State law to conduct redistricting? We believe it's possible for the legislature to conduct redistricting again and to pass a new law. But why doesn't that moot the case? However, there is a process under the VRA that's been imposed by the United States Supreme Court, and that is that if the law is declared void, then the body that adopts that law, the legislature in this case, gets to be involved in the remedial process. The remedial process consists of this. The legislature in this case would submit a new law, a new map to the District Court, and the District Court would be required to give that map considerable deference. And you prefer that to redistricting under State law? We prefer that to another trial, which would be required. Following the redistricting decision, right? If this case is closed, if this court simply declares it moot and the District Court's judgment is final, then if we redistrict again, if there's another law passed, it would have to go through this process again. There would be a new trial, new appeals. But we'd have arguably new districts, right? And we would not be entitled to the deference that we are entitled to in the remedial process. What do you mean this process again? What process? Well, the process was set forth primarily in the Supreme Court decision in Wise, but it involves after the law is declared void under the VRA, then the remedial process is what happens next. No, I'm familiar with the remedial process. You said if the legislature were to redistrict and set up new districts after this election, you'd have to go through this whole process again. What process? The litigation. You're assuming you'll be sued, you mean? There would have to be a new lawsuit. There would be no remedial process until the new law is declared. Maybe there would be no new lawsuit. Or maybe there would be no liability finding. I think the history is that after a redistricting process, there's almost always a lawsuit in recent years. And why should we be required to take that chance if this case is remanded? I don't get what the chance is, right? I mean, you've got the trial. I get the administrative kind of cost associated with a new lawsuit, right? But you'll get the deference at the remedial stage in the next case, right? We will. And you might win on the initial finding about whether or not there's a violation. I think the question becomes whether or not it makes sense from a judicial economy or the party's economy perspective to have to relitigate the entire thing. If this case gets remanded in the next appeal, whether it be for a finding, a determination that the district court needs more findings on the determination that there was a Section 2 violation, whatever the reason is, if it's not simply reversed based on Section 1983 and the private right of action, then why would we not keep this case alive, keep our appeals alive, remand on our appeals so that the district court can go through the proper remedial process and we don't have to have another lawsuit? That's my question. But if a second case is affirmed, then where does that leave us? Then I think the court has to look at the issues in our case and determine whether or not it's proper to affirm that case. If we affirm the case that's heard after this one, then I think the court has to look at our appeal carefully and look at whether or not the proper remedial process was followed. But you agree that you're not seeking any relief before the upcoming election. Is that right? Or are you asking for some kind of relief that would change the upcoming election? I don't think it's possible, Your Honor. I think there are too many ballots already out there that have already been printed. So I don't think that's possible. It's unfortunate. So you're seeking some kind of relief that would occur after the election, before the next election? Yes. In a remedial phase rather than the Assembly just going and enacting new maps? A new law that would start this process all over again. That's what we're trying to avoid. Send it back for the remedial process so that we can get the deference that the Supreme Court said is necessary and that we don't have to go through an entire lawsuit to get back here at some point. Why didn't you intervene then earlier in the case? Because we didn't have differing interests from the Secretary. It was reasonably foreseeable that if there was a liability finding we would be here, wasn't it? Not necessarily, Your Honor. I think it's important to understand the timeline of what occurred here. We had, first of all, one of the elements of Rule 24 intervention is that our interests aren't being adequately represented. At no point during the underlying litigation did the legislative assembly think that its interests weren't adequately represented. Well, I understand that, but don't we have cases that say if the party can foresee that depending on how the first stage is resolved, that its interests will be implicated later, then it can't wait until the last minute. And here's where it's important to understand the timeline here, because I think that it all makes sense if you understand this timeline. Trial was June 12th to the 15th of 2023, right? November 17th, 2023, the district court issues its judgment. It says that the Secretary and assembly, not a party, shall have until December 22nd, 2023, to adopt a plan to remedy the violation. After that, that was November 17th. From November 17th through the 28th, which included the Thanksgiving holiday, it became clear that the Secretary's and the assembly's interests were divergent. This was the — there were meetings between the executive branch, the Secretary, the agency office. Well, during the trial, I mean, going back to Judge Collins' question, I mean, during that trial, if the Secretary lost, you knew — you know, and that was the issue at the trial, right? If the Secretary lost, you knew that remediation would follow, correct? We did. And that remediation wouldn't necessarily implicate the legislature's interests. We did. So that is my question. Wasn't it reasonably foreseeable then, unless you're really confident in your trial strategy, but isn't it reasonably anticipated that that is going to happen if we lose? And why doesn't that matter? I don't think so, Your Honor, and I think this is why. There was a perfect storm that developed, the district court taking five months to issue its decision. Trials, June 12th through the 15th. All of a sudden, according to the Secretary, not necessarily according to the legislative assembly, we're on the eve of an election. After the trial, after the finding of liability was determined, the Secretary took the position, I just need a map. I am constitutionally required to administer elections, and I want to do it efficiently, and I want to do it right, and therefore give me a map, any map. The legislature at that point is saying, wait a minute, let's wait. We impose this map through the legislative process, and we think it's right, but we want to be in at least involved in the process to develop a new one. The Secretary is saying, we don't have time for that. The legislature is saying, please let us be involved in this constitutional process. And so at that point, it's a perfect storm. The timing of everything, no one knew that, no one knew that we were going to lose, put it that way, and no one knew that there was going to be this urgency on the part of the Secretary of State, the legislative assembly didn't know, urgency on the part of the Secretary of State to just give me a map. Even if it's a map written by plaintiff's counsel, I just need a map. So, that's why. What was the reason the Secretary gave for needing a map? To administer the election. The Secretary was not criticizing that in any way. The Secretary was legitimately concerned about being able to get ballots out there in time to administer the election. There's a statute, isn't there, that says when ballots need to be issued? There are both Federal and State laws. One of the issues that we raised Why couldn't the assembly have foreseen this? You still haven't really addressed You've said it's a perfect storm and so forth, but why couldn't you have looked in June and said Well, Your Honor, keep in mind that We lose this case, we're going to need to be involved in the remedy, and the Secretary is going to be under this time pressure, so we better get in the case just to be prepared. And the time pressure was not foreseeable, I would submit. I thought you just said there were Federal and State laws that require issuance of ballots. There are State laws, but keep in mind, Your Honor, below we asked for 49 additional days until February of 2024. That's what we asked the district court for. The Secretary wasn't happy about that, but that's what we asked the district court for. Well, and at that point, the Secretary was the only party and said that's not going to work, right? So, I mean, for the district court, you're hearing two competing interests, right? You're hearing from the Secretary of the State saying, I need a decision or I need a plan by the end of the year. Right. And that's where the district court should have let us be heard on that issue. The district court never let the legislative assembly be heard on that issue. You know, recently in the Berger case at the U.S. Supreme Court, the court said, quote, normally a State's chosen representative should be greeted in Federal court with respect, unquote. That didn't happen here. At every turn, the legislative assembly was turned away from being able to exercise its constitutional responsibility. I see my time is up. I've saved some time for rebuttal. You may. Thank you. Thank you for your argument. Mr. Gaber, we'll hear from you. Good morning, and may it please the Court. A host of jurisdictional timeliness and waiver obstacles doomed the legislature's appeal before getting to the merits of the arguments it has raised. The underlying dispute is moot, and so this Court lacks subject matter jurisdiction. First, with respect to the deadlines, the legislature initially agreed with the Secretary that December 31st was the deadline. They joined in the request for a stay in the district court, and then that was the argument put forth by the Secretary. Only once this Court denied the stay did the legislature change its mind as to what the relevant deadline was. Then it became either February or April. In any event, the election is now in two weeks, and the dispute in the district court was about whether how much time was reasonable in advance of the 2024 deadlines. And so this Court does not need to find that the district court abused its discretion by listening to both the legislature and the Secretary as to what the amount of time it had to stay its hand before imposing a remedy was to allow the legislature to act. In order for the legislature to, if it chooses in the future, have a different, you know, to alter the remedy for 2026 or going forward. And the way this normally works is a legislature adopts a map, and the party in the case, in this case the Secretary, submits that map to the Court for consideration. And there's a remedial hearing to determine whether or not it resolves the violation, and the legislature is given deference in that process. That can happen, if the legislature chooses to do that, that can happen without concluding that the district court abused its discretion in this case by denying intervention. The legislature — So how would it happen? The legislature would just adopt a map, the Secretary would submit it to the Court, and we would go through the remedial process again. Is there anything preventing the legislature from redistricting, anything in the district court's order that would prevent the legislature from independently under State law starting over?  In fact, we, all along in the district court, we filed briefs saying, this is a deadline on the district court. It needs to ensure that it has a map in place if the legislature fails to act. And so the legislature could have proposed, it could have adopted a different map after the district court's deadline and submitted it to the court and said, okay, we've done it now. We want relief from your injunction. Review ours and see if it is adequate. They could have changed the election deadlines. They're the legislature. After the election coming in a couple of weeks, will the district court — or, I'm sorry, will the legislature have to submit a redistricting plan to the district court, or will it just result — would the option be for a filing of a new lawsuit? I think the way that this ordinarily happens in cases is it's submitted to the district court, which has enjoined the existing law and held that there's a violation. It would be as if they were — whether or not there are interveners in the case doesn't change the fact that they pass the new map, submit it to determine that it remedies the violation. And we don't need to undo what the district court correctly did in this case with respect to the intervention. Wouldn't that require a new lawsuit? I'm sorry, Judge? Wouldn't that require a new lawsuit? Not — It's a different map. Who knows? It may be compliant. And that would be determined either through the — you know, if they are replacing the remedy that's in place, that could be determined through the remedial process. That's usually — Well, the remedy that's in place, though, is it limited to the 2024 election, or is it broad? In other words, does the district court maintain, generally speaking, jurisdiction until the next census is released? Or how long does this case, the remediation phase, how long does it survive? Normally, the injunction is to put the map in place starting with the 2024 election. If the legislature comes in and changes the map, and it sounds to me like that's what they want to have happen, is just submit it to the district court to determine that it also remedies the violation the district court found. So you're saying your clients would not object if the assembly were to come up with a new map, not as a redistricting process, but as a submission in this case, and argue that this new map that they submit should supplant the court's map going forward — I think that — — through 2030, and that they are entitled to the normal deference that comes in the remedial process. You're saying that's all fine with you, you have no objection to that procedural approach? That's what we've been saying in the district court all along. I'm asking if you're saying it now to us. And so long — Yes or no? Yes. We might object to the substance of the map, of course.  Right. But you're saying they could pursue the new map through a remedial process in this case. They don't have to do an independent legislative process. That's correct. Would you oppose a motion to intervene after the 2024 election by the legislature? I think it would — if it were filed in a timely manner, perhaps not. The time would start ticking when, from the 2024 election? Or would it be with eyes pointing forward to the 2026 election? I think it would be with the — whether it was timely would be with respect to the deadlines for the 2026 election. Certainly what happened here is the legislature didn't get involved until post-judgment. And the first time it requested more time was the day before the deadline in the district court. And it never sought relief from this court in an expedited manner that could have happened before April or February, whatever the relevant date was. But going forward, they could submit the map through the secretary, too, right? Exactly. They would have to intervene. And that is normally what happens. The secretary hasn't objected to submitting the legislature's map. The secretary just said there wasn't enough time earlier to wait for the legislature. That's right. Isn't that right? That's right. And as we said in the district court, the legislature could have kept going on its work. It could have changed the relevant candidate filing deadlines, even for just these districts, and submitted its proposal to the court and said, okay, we know that you had to get a map in place for your relevant responsibilities. Here's ours. We'd like to supplant it. They didn't do that. And so we can't say that the district court has abused its discretion, nor is there even a live controversy. But that future process isn't about the process that happened in the district court. That was about how much time was reasonable in advance for the 2024 deadlines. We can't revive that controversy now with the election two weeks from today. And so whether they submit it again in the district court as a remedial process via the secretary, whether they seek to intervene again later, that doesn't revive this past controversy. And I think that the timeliness question is clear in this case. And there are cases from this court, the Arkansas Electric Consumers case, the United Foods case, that find that this is far beyond what would be considered timely. And it's nothing like the two days that were at issue in the Cameron case that's cited in the briefs. With respect to so that's why this court doesn't have jurisdiction over the intervention motion. And as a result of that, it has no jurisdiction with them not being parties. It has no jurisdiction over the appeal of the subsequent order, the final order of the district court that denied the extended deadline and imposed the remedy. But just on the question of jurisdiction, your point is mootness? Is that what you mean by jurisdiction? It starts with mootness. Because it's too late to give any relief as to the 24 election. But I thought you were saying that the case could continue with respect to the 26 election. So why would it be moot? The appeal of the denial of intervention, which was about intervening for the 2024 process. I see. You're saying the motion was limited to the 24 election? Correct. I see. And so this, so this appeal is moot. And the first appeal. And as a result, they're not a party to the case. And so their non-parties cannot file appeals. And so the appeal of the second order where the district court denied additional time and imposed the remedial plan, they're not a party to the case. And so they cannot appeal that. So there's no jurisdiction over that. But on top of that, they didn't have standing to appeal the district court's specific remedy that it imposed because they were not ordered to do or not do anything. That was an order to the secretary to implement the new map. And under North Dakota law, the North Dakota Attorney General is the only state official who has the power to represent the state in litigation. And under the Hollingsworth v. Perry case, the Virginia House of Delegates v. Bethune Hill, here the North Dakota Legislative Assembly is not empowered to represent the secretary with respect to what remedial map has been put in place and to challenge that here on a constitutional basis. You're saying their motion to intervene was specifically limited to the 2024 election? It's a little hard. The motion to intervene, I think, was limited. It was about how much time should they be given at that time, right? And that is judged under the Wise v. Lipscomb case about the upcoming election process. No, we're not talking about what they were asking for for time. We're asking about the motion to intervene. The motion to intervene is I understand. Did they intervene strictly to litigate the 2024 boundaries, or did they move to intervene in the case, period? They moved to intervene in the case and raised merits arguments as well. They joined in the secretary's stay motion. They said that they planned on reserving their rights to intervene. Then there is a live controversy for future elections. Well, no, because they don't have standing to intervene on that purpose. Only the Attorney General can defend the state on the liability question, and the Legislative Assembly under North Dakota law is not empowered to do that. What about intervention to submit the new remedial map? I think they could file a new motion. Why do they need a new motion? Why can't they just pursue this appeal and say, we should have been allowed to intervene? I think they can pursue it, but the problem is the district court did not abuse its discretion by denying it. That's a merits argument. That may be true, but that means it's not moved. They just lose because there was no abuse of discretion. I think if they had presented in the district court in their motion, even if we're too late for 2024, we'd like to propose one for 2026. But what was before the district court was not that. It was about the 2024 deadlines and then potentially reserving rights on the merits of the liability question. They don't have the jurisdiction to do that, and they didn't tell the district court that that's what they wanted to do with respect to 2026. And so I don't think we can say that the district court abused its discretion in denying this intervention motion. Whether they can seek future relief, future intervention, or just do as most states do, where the legislature passes the map and the party to the case submits it to the district court for review. All of that can happen. District court doesn't need to change the timeliness requirements or twist jurisdiction in order for the legislature to do what it's now saying it would like to do in the future. I do want to point out, with respect to the arguments that they've raised in their brief about the remedial map itself, one, as we say, they don't have jurisdiction to appeal that map as not the state official that's been charged by state law to do that. But they also forfeited that argument by not raising it in the district court. The only argument they raised in opposition to the motion to impose a remedial plan was that they wanted more time. They said nothing in that, which is at document 163 and page 276 of the legislature's appendix. They raised no argument about the substance of the district that the district court imposed. And, in fact, and perhaps this is why, they filed with the district court at docket 158-3 an attachment to the declaration of Ms. Thompson, the legal division director for the North Dakota Legislative Council. This starts on page 231 of the appendix. They have maps of the plaintiff's proposed maps, and they say on there, this is at page 231, and this is about the first proposal, that they contain alternative district configurations that demonstrate the Native American population in northeast North Dakota is sufficiently large and geographically compact to constitute an effective majority in a single-member district, single multi-member district. And then on the next page, page 232, the legislature says, the compactness of Plaintiff's Map 1 meets the standards used by the committee when drawing the existing district map. So at the same time they were asking for more time, they told the district court that the plaintiff's proposed maps in this case satisfied the traditional districting principles and met the first jingles precondition. And so the argument before the court now is the precise opposite, and I don't think that they can waive the argument by not raising it in the district court. While they're simultaneously telling the district court that plaintiff's proposed plans adequately satisfy the traditional districting principles of North Dakota. And I see I have 15 seconds, so if your honors have any further questions for me, I'll... Very well. Thank you for your argument. We'll hear rebuttal. Thank you, Your Honor. First of all, we did not agree that the Secretary, with the Secretary, that the deadline was December 31st for this election to go forward. Can you help me pin down what is the dispute here? I mean, as I understand it, both parties agree it's too late to do anything for 2024. Yes. Both parties, as I understand it, agree that the legislature can either submit a new plan through the Secretary or file a motion to intervene going forward. Does that satisfy you? In other words, is it just a matter of how we get to that outcome based on the appeal and the various arguments? Help me out here. What is it that we're left with here? Your Honor, I haven't seen any precedent for that proposition. I mean, this is a case where the district court...  For the proposition that this case can remain alive after this appeal is affirmed, the district court's judgment's final. I don't know what that would look like. I don't know what the precedent is for us to then open this case up again and have the remedial process available for us as opposed to a new lawsuit. But you think you need an order reversing the district court to keep... Even though the other side is saying we're fine with that, you're insisting that you cannot... If they can be... If you cannot get the deference you want, you insist on triggering a new lawsuit. Well, I think this court has to do something to send the message to the district court that we need to be heard because I don't think the district court believes right now that the Legislative Assembly is entitled to be heard on any of these issues. Well, that was kind of hung up with the timing issue in the 2024 election, don't you think? Who's hung up on that? In other words, once the... I mean, that was driven by the fact that you were too late in light of the upcoming 2024 election. No. I think the district court, the basis for the district court's denial of our request for more time was that we weren't a party to the case and we're properly not a party to the case. I guess you're saying if these appeals are affirmed, you think that case is basically over and there's no mechanism available to submit a new map for 26 in this case. Is that what you're saying? I haven't seen any precedent to the contrary. To the contrary of what? That the case would not be dead. That the law that the district court implemented and imposed on the state of North Dakota would not be the law until we pass a new law to replace it, in which case a new case would have to start. Okay. Thank you for your... Thank you.